Merchants Transfer & Storage Company, Appellee, v. Emerson-Brantingham Implement Company, Appellant.

CONTRACTS: Expiration of Written Contract—Continuance of
1 Business—Presumption. The *presumption* that a continuance of business relations between contracting parties after the expiration of a written contract is on the terms of the old, expired contract, does not prevail on a record which presents a jury question on such issue of fact.

EVIDENCE: Burden of Proof—Expiration of Express Contract—
2 Continuance of Business—Effect. He who pleads that the terms of an expired written contract control subsequent business relations has the burden to so prove.

*Appeal from Polk District Court.*—William S. Ayres,
Judge.

May 7, 1918.

Action at law to recover the reasonable value of storing and transferring machinery repairs for defendant. There was a trial to a jury, and a verdict and judgment for the plaintiff for $567.72. Defendant appeals.—*Affirmed.*

*Strock & Wallace,* for appellant.

*R. L. Parrish,* for appellee.

Preston, C. J.—The parties had been doing business for a number of years, making a renewal contract each year. The last one expired by its terms December 31, 1912. Before the expiration of the 1912 contract, plaintiff presented to defendant's agent in charge of the business at Des Moines a proposed contract for the year 1913. The provisions in the proposed contract as to charges for some of the items were the same as the prior contract, but as to others, a different compensation was

fixed. There were negotiations between the parties, but the new contract was never signed. Plaintiff sued upon a *quantum meruit* for storage and transfer charges for the year 1913, alleging that it had stored and transferred for the defendant certain machinery repairs, and that the reasonable value of the services was $2,088.86. Defendant alleged that, by express agreement with plaintiff, plaintiff and defendant continued to do business for the year 1913 under the terms of the contract for 1912; and that, because of the plaintiff's demand that defendant enter into a contract for 1913, and the defendant's refusal to execute said contract, or continue placing its goods with the plaintiff for storage and transfer, except under the terms of the 1912 contract, and on account of plaintiff's acquiescence, the plaintiff is now estopped from claiming any other, further, or different amount than that stipulated in the 1912 contract; and that it had paid plaintiff under a stipulation, at the rate covered by the 1912 contract. It appears that, after this suit was brought, it was stipulated by the parties that defendant was indebted to plaintiff in the sum of $760.56, if the provisions of the 1912 contract governed, but that, if the rate or charge for storage and removal of repairs was not governed by the 1912 contract, and it should be established that the reasonable value of the storage and transfer charges for repairs was in excess of such amount, then defendant was to receive credit for the amount paid upon the amount found due. Plaintiff admitted that it had received the $760.56, and asked judgment for the difference between that and its original claim. For reply, it denied each affirmative allegation of the answer. It will be observed that defendant pleads an express agreement that the terms of the 1912 contract should govern, but concedes in its reply argument that it may not have established that there was such an agreement.

Appellant's real contention seems to be that, because

the parties continued to do business for the year 1913, without any new contract, there is a presumption that it was according to the terms of the 1912 contract. Appellee concedes that this is the rule in some cases, but says that, under the circumstances of this case, the presumption does not obtain. It is conceded that there is a conflict in the testimony as to what occurred at the time plaintiff or its agents presented the proposed new contract to the defendant or its agent. It is appellee's contention that the question in the case is narrowed to this one question of fact, which the trial court submitted to the jury, whose finding was in its favor.

Evidence on behalf of plaintiff as to this transaction is, substantially, that, about November, 1912, plaintiff's agent, Johnson, acting for plaintiff, took the proposed contract for the year 1913 to Mr. Ruhl, defendant's agent; that Mr. Ruhl looked it over, and said that he would never sign that contract, but would submit it to the house, and they could do just as they pleased about it; that Johnson left the contract with Ruhl, and had not seen it since; that he had a talk with Mr. Ruhl afterwards, and asked what the company had done with that contract, and was told by Ruhl that he had sent it to Rockford, Illinois, and he supposed it was buried there with a lot of other papers that he had sent down; that another of plaintiff's employes, Halleck, was with Johnson; that subsequently, in January, or in the spring of 1913, Johnson told Ruhl that they ought to have the contract, because they had taken on a lot more of their goods, hay tools, etc., and that he did not specify any amount in the former contract and he ought to have something to go by; and that, therefore, he (Johnson) insisted on that contract. Testimony on behalf of defendant on this point is that he executed the contract for the year 1912; that Mr. Johnson presented the proposed 1913 contract for signature; and that, after looking it over, he

(Ruhl) told Johnson he would not accede to it, and said to him:

"Now if you are not willing to do business under the old contract, or a similar one, we will move now, and you may go back to the plaintiff company and tell them so."

It is further testified that Mr. Schrader was present. He thinks no one spoke about the 1913 contract after that; he thinks he never sent the contract to his company; but correspondence seems to show that he did, during the year 1913; and on October 16th, plaintiff wrote a letter to defendant at Rockford, which states, among other things:

"Last spring (fall), we sent you a contract to sign; but, as you did not return the same, therefore you have no contract for 1913."

April 7, 1914, plaintiff sent defendant its bill, and in the letter, stated, among other things:

"As there was no contract between us for the year 1913, we have based our prices upon the contract which was submitted to Mr. Ruhl early in the season, and which contract for some reason was not signed by you."

April 16, 1914, defendant wrote plaintiff:

"You say there was a new contract submitted by you in the year 1913. We do not deny that such contract was submitted, but we do deny that such a contract was ever accepted or signed, and we continued to do business with you under the contract of January, 1912," etc.

Later, in the same month, plaintiff wrote defendant, in response to the last letter:

"We note what you say concerning the continuance of the 1912 contract after it had expired—but we take exceptions to working under an expired contract without consenting to such an arrangement. It is true the transfer prices are similar, and the difference between the 1912 contract and the new contract which we submitted to you is in the terminating clauses. * * * We think when you con-

sider that you gave us no reason to know that the new contract was not satisfactory to you, that you had no right to think we would be willing to renew the 1912 contract, and your failure to advise us gave us the right to assume that the new contract was satisfactory. If the new contract was other than the ordinary prevailing prices for the period it covered, we would expect you to take exceptions, but under the circumstances, we think you should remit in full."

As stated, these letters were written after the expiration of the year 1913, and may not be controlling; but they cast a side light on the situation and what was in the minds of the parties. As before stated, defendant was relying upon the 1912 contract, either because of an express agreement, or the acquiescence of plaintiff, or because of a presumption. Plaintiff seems to have thought, at least at first, as shown by the correspondence, that the 1913 contract, though not signed, was binding; but when it brought suit, it was done on the theory that there was no contract and no presumption, and that, therefore, it was entitled to recover for the reasonable value of the services.

Defendant offered two instructions, which were refused; which refusal, together with the giving of certain instructions by the court, is relied upon by appellant as erroneous. The first offered instruction is:

"It will be presumed, in the absence of proof that a new or different contract was entered into, where services for a definite term were to be rendered at a fixed price, and the party continues to render services after the term without any new contract, that the parties intended that the same prices were to be paid as under the original contract."

And the second:

"If you find from the evidence that the plaintiff submitted to the defendant a contract for the year 1913, and the defendant refused to enter into the proposed contract,

and you further find that the plaintiff, after such refusal, continued to render for the defendant the same or similar services as were under the 1912 contract, that then the defendant is liable to the plaintiff for the charges as fixed by the 1912 contract, which having been paid, your verdict will be for the defendant."

In the instructions by the court, the jury was told, substantially, that the only issues submitted are: First, whether or not such services were rendered under the terms of the 1912 contract; second, that, if the jury should find that such services were not to be rendered under said contract, then it should determine the reasonable value of such services; and further, that, the contract for the year 1912 having expired by its terms, and a demand or request for a new contract of different terms having been made by the plaintiff on the defendant, the burden of proof was upon the defendant to show, by a preponderance of the evidence, that said services were rendered under the terms of the 1912 contract.

"And if you find that the defendant, through its agent Ruhl, at the time the 1913 contract was presented to him by Johnson, advised the plaintiff that it would only remain under the terms of the contract of 1912, then, in that event, you will return your verdict for the defendant."

But that, if the jury should find that the 1912 contract was not extended, or said services rendered under its terms, then, in that event, the plaintiff would be entitled to recover for such services the reasonable value thereof, as shown by the evidence; and that the burden of proof was upon the plaintiff to show, by a preponderance of the evidence, the reasonable value of such services; that, if the jury should find plaintiff entitled to recover the reasonable value of the services, and not under the terms of the 1912 contract, and that the reasonable value of such services exceeds the sum of $750.56, it should return a verdict for the plaintiff for such additional amount; but that, if it should be found that

such reasonable value is equal to or less than $760.56, the verdict should be for the defendant.

1. On the question as to whether there is a presumption that the services sued for were continued under the contract of 1912, both parties cite cases arising, for the most part, between employer and employe; and there is no claim by either side that such cases do not apply to a transaction such as that in controversy in this case. The cases relied upon by both parties are the same,—at least some of them. Appellant cites Labatt on Master and Servant (1913 Ed.), Sections 230 to 239; 26 Cyc. 976, 1038; Wood on Master and Servant (2d Ed.), Section 96; *Hahnel v. Highland Park College,* 171 Iowa 492; *Laubach v. Cedar Rapids Supply Co.,* 122 Iowa 643; *Curtis v. Dodd & Struthers,* 172 Iowa 521; *Home Fire Ins. Co. v. Barber,* 67 Neb. 644 (60 L. R. A. 927); and other cases.

On the other hand, it is contended by appellee that the presumption as to the application of the price fixed by the expired contract does not apply where a new arrangement is shown, or where the facts rebut the legal presumption; and they cite the *Hahnel* case, supra; the *Laubach* case, supra; Labatt on Master and Servant (2d Ed.), Sec. 230; and *Spicer v. Earl,* 41 Mich. 191 (32 Am. Rep. 152).

They state it another way, by saying that the law is that, if an employe continues in his employment after the expiration of the former contract, with the knowledge and consent of his employer, and without any objection or protest from the employer, the employer is liable for the services performed, and the contract, in the absence of other testimony as to the value of the services, furnishes the measure of recovery; and on this cite *Curtis v. Dodd & Struthers,* supra; and *Laubach v. Cedar Rapids Supply Co.,* supra; and further, that, where there is a mutual mistake or misunderstanding, each party supposing that the price is fixed by the contract, but in fact there is no contract, the reasonable value of the services may be recovered, citing

*Lannis & Merster v. Woods*, 4 Ky. L. Rep. 365. And they cite, further, *Tribune Assn. v. Eisner & Mendelson Co.*, 34 Misc. (N. Y.) 657, to the point that, for services rendered after the abandonment or termination of an express contract therefor, there may be a recovery upon a *quantum meruit*. They cite also *Jones v. City of New York*, 47 App. Div. 39, to the point that, when a party to a contract repudiates it, the other may accept this as an abandonment of it, and may recover for the value of the work already done.

In the instant case, had the parties continued their business relations with each other for the year 1913 without anything said, then the presumption would arise that the contract of 1912 would govern. In fact, as we understand it, counsel so concede. But, under the circumstances of this case, before set out, we are of opinion that the presumption does not obtain. The contract of 1912 expired, by its terms, on December 31st of that year, and before that time, the parties began negotiations for a new contract, on different terms, for 1913. It cannot be claimed from the record that the minds of the parties met, and that plaintiff assented to continuing under the old contract,—at least, it was a question for the jury whether there was such assent, and this question was submitted to the jury. Furthermore, plaintiff was objecting to defendant's remaining under the terms of the old contract. True, defendants said they would not stay on any other terms, but would move out. They did not move out. Whether plaintiff assented to such proposition was for the jury. If plaintiff did not so assent, then clearly there was no contract between the parties; and we think, too, that, under the record, unless plaintiff did assent to defendant's proposition, there was an abandonment or repudiation of the old contract. As before stated, the plaintiff, either by mistake or intentionally, was claiming that the proposed new contract was in force; that defendant, in place of re-

2. **Evidence:** burden of proof: expiration of express contract: continuance of business: effect.

fusing to do business under the new contract, accepted the new contract and took it under advisement, sent it to the home office for signature, and put plaintiff off, from time to time, and delayed final answer until the year 1913 had nearly expired, accepting all the while plaintiff's services, with knowledge that the plaintiff was refusing to do business under the terms of the 1912 contract. This being so, there was no presumption, and no contract. In that case, plaintiff would be entitled to recover the reasonable value of the services.

Plaintiff had the right to refuse to go on under the 1912 contract after its expiration, and the evidence shows that it did so refuse, unless, as claimed by defendant, plaintiff assented to defendant's proposition. The jury would be justified in finding from the record that the original contract was terminated, not only by its terms, but by the negotiations of the parties. We think it cannot be true that the mere fact that no new contract was made, or that there is dispute or misunderstanding as to the new arrangement, calls into effect the presumption claimed. There was some evidence of a new arrangement, indicating a new status between the parties for the year 1913, which excludes the presumption that the arrangement of 1912 should continue.

There may be other circumstances bearing upon this question; but, under the whole record, we are of opinion that there was no presumption, and that the court did not err in failing to instruct the jury with reference to presumption. This disposes of the error predicated upon the refusal of the court to give defendant's offered instructions, even if it be conceded that they correctly state the law. It also disposes of the appellant's claim that the court erred in admitting evidence as to the value of the services performed.

2. It is thought by appellant that the court erred in placing the burden of proof upon the defendant as to its claim that the 1912 contract governed, appellant's conten-

tion being that the burden was upon plaintiff to show that the 1912 contract was terminated, or a new contract made. But we think there was no error at this point. Had the plaintiff sought to recover under the 1913 contract, it would have the burden to show that such contract was in force; but instead, plaintiff sued upon a *quantum meruit,* and the burden was upon it to prove the issues tendered by it, and they were only that the service was performed, and the value of the service. Defendant did not rest upon its general denial, but pleads affirmatively that the provisions of the 1912 contract govern. It would not be enough for it to set up the 1912 contract, and show that there was such a contract in 1912. It alleges that such contract continued, and that it was in force. As to this defense, then, the burden was upon it.

It is our conclusion that there was no prejudicial error, and the judgment of the district court is, therefore,—*Affirmed.*

LADD, EVANS, and SALINGER, JJ., concur.